(C.D. 2196)

SIDNEY HIRSCHMAN *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 4, 1960)

Plaintiff not represented by counsel.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff* and *Sheila N. Ziff*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge: In this action, plaintiff seeks to recover an amount claimed to have been illegally assessed and collected as customs duties on an importation of reptile skins exported from Brazil and entered at the port of New York.

The involved entry was liquidated on August 10, 1956. Part of the merchandise appears to have been classified in liquidation as reptile leather and assessed with duty at 15 per centum ad valorem under 19 U.S.C.A., section 1001, paragraph 1530 (c) and (g) (paragraph 1530 (c) and (g), Tariff Act of 1930), as amended, and part as manufactures of reptile leather or as reptile leather belts and assessed with duty at 17½ per centum ad valorem under paragraph 1531 of the same statute, as amended. The liquidated duties amounted to $2,577.08, an increase of $1,810.68 over the amount paid by the importer as estimated duties.

The plaintiff paid the increased duties and filed a protest against the collector's liquidation under 19 U.S.C.A., section 1514 (section 514, Tariff Act of 1930), in which the following claims were made:

1. It is claimed that the value of $16,381 taken in such liquidation is the result of an erroneous conversion of Brazilian Cruzeiros into United States Dollars, and that the value obtained as a result therefrom is far in excess of what this duty should be.

2. The actual value of the merchandise (alligator skins) involved is also much less than evaluated.

3. At the time of sale of said merchandise to Sidney Hirschman, the merchandise was represented to him to be for shoe manufacture; but that after importing same and efforts to sell same, it was first learned that the said skins were of a very inferior quality, and little of it was saleable to shoe manufacturer, some of it was sold at a loss, and some is still with Sidney Hirschman, who is unable to sell same for its inferior quality.

The issue presented by the first protest claim relates to currency value and is properly litigable in this action. However, the remain-

ing claim appears to relate solely to the value of the merchandise and, therefore, presents an issue that cannot be raised and prosecuted in this proceeding. There is nothing to indicate that the legality of the appraisement is questioned, and this court has held that where no question of law is involved, the value of merchandise for customs purposes can only be litigated on an appeal to reappraisement and cannot be attacked in an action originating by way of protest against the collector's liquidation. See *T. S. Kennedy Co.* v. *United States*, 2 Cust. Ct. 404, C.D. 165; *Phil. B. Belceart Co.* v. *United States*, 13 Cust. Ct. 18, C.D. 861; *Ludlow Manufacturing & Sales Co.* v. *United States*, 22 Cust. Ct. 17, C.D. 1150; and *Julius H. Goldstein and Harry Goldstein, D.B.A. Lee Products Co.* v. *United States*, 40 Cust. Ct. 213, C.D. 1984. If plaintiff disagreed with and desired to contest in the courts the value of the involved reptile skins as found by the appraising officer, the proper procedure would have been to file an appeal for reappraisement under 19 U.S.C.A., section 1501 (section 501, Tariff Act of 1930), as amended.

Thus, for the purposes of this case, the only question raised by the protest for decision is whether, in liquidating the entry covered thereby, the collector erred in converting Brazilian cruzeiros into United States dollars.

The evidence of record consists of the testimony of plaintiff, who appeared without benefit of counsel, and of the official papers.

Plaintiff testified, in substance, that his brother, a dealer in Brazil, purchased the skins in question for him; that Brazilian cruzeiros were probably used as the currency of purchase; that he (the plaintiff) paid his brother for the merchandise in United States currency in the amount of $7,500 (R.12) or $7,250 (R.28); that he informed a Mr. McCarthy, a customs official, of the amount he had paid for the merchandise in United States dollars; that he was allowed to enter it on that basis; and that he heard nothing more from the customs officials with regard to the importation until he was informed of the increased duties determined upon liquidation of the involved entry. When he sought the reason for the increase, he was told that the additional duty was imposed "on account of the currency." Plaintiff stated that there is a "free market" in Brazil.

The court attempted through questioning to elicit from the witness information with respect to the manner in which the merchandise was entered, invoiced, and appraised, but without much success. Nor was it any more successful in getting the plaintiff to spell out the specific error or errors which the collector is supposed to have committed in converting the Brazilian currency into the currency of the United States. Despite the fact that several continuances were

granted in an effort to afford plaintiff every opportunity to prepare his case for trial, he seemed to know little about the transaction beyond the amount he expended for the goods in United States currency, the amount of increased duties he was required to pay, and the fact that the importation of the merchandise proved to be an unprofitable business venture. Consequently, the testimonial evidence is of little aid to the court in ascertaining the facts of the case, or the contentions of the plaintiff.

Resort to the official papers is more rewarding. Though in a somewhat torn condition, they are sufficiently intact to clearly show that the merchandise was invoiced, entered, and appraised in Brazilian cruzeiros. In the absence of an appeal to reappraisement, it was the duty of the collector, in liquidating the entry, to use the value as found by the appraiser as the basis for the assessment of duty, and, since the merchandise was valued in foreign currency, to convert said currency into United States dollars, in conformity with the provisions of 31 U.S.C.A., section 372 (section 522, Tariff Act of 1930), which provided as follows:

§ 372.

#### Conversion of currency—Value of foreign coin proclaimed by Secretary of Treasury

(a) The value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year.

#### Proclaimed value basis of conversion

(b) For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after June 17, 1930, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subsection (c) of this section, shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of subsection (a) of this section, for the quarter in which the merchandise was exported.

#### Market rate when no proclamation

(c) If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. If the date of exportation falls upon a Sunday or holiday, then the buying rate at noon on the last preceding business day shall be used. For the purposes of this subsection such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary of the Treasury, who shall make it public at such times and to such extent as he deems necessary.

In ascertaining such buying rate such Federal Reserve bank may in its discretion (1) take into consideration the last ascertainable transactions and quotations, whether direct or through exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange.

Defendant contends that, in liquidating the entry, the collector converted the Brazilian cruzeiros in accordance with the statute. As far as we can determine, this contention is valid. According to the consumption entry, the merchandise was exported from Rio de Janeiro, Brazil, on February 20, 1953. This was the date of exportation for purposes of currency value under subsection (c) of section 372, *supra*. The value of the cruzeiro on that date, as determined by the Federal Reserve Bank of New York and certified to the Secretary of the Treasury under the provisions of the cited subsection, was $0.0544060. (See T.D. 53209.) Figures appearing on the consumption entry indicate that this value was used by the collector in converting the Brazilian cruzeiros into United States dollars for the purpose of the assessment and collection of duties upon the involved merchandise. Thus, it appears that the collector acted properly in this respect and that plaintiff's claim of erroneous conversion is without merit. There is certainly nothing in the record before us to indicate otherwise.

A presumption of correctness attends the official actions of the collector, and, in order to rebut the presumption, it must be established by competent evidence that he did not discharge his duties in accordance with the applicable law and regulations. See *McKesson & Robbins, Inc.* v. *United States*, 27 C.C.P.A. (Customs) 157, C.A.D. 77; *United States* v. *Henry W. Peabody & Co.*, 40 C.C.P.A. (Customs) 59, C.A.D. 498. Where, as in the instant case, the record is devoid of such evidence, the presumption has not been overcome.

Certain statements made by plaintiff indicate that the difficulty, which led to this action, may stem, in part at least, from lack of experience in importing merchandise and unfamiliarity with customs procedures. (R.25.) However, the court is unable to grant the relief requested, but, for the reasons stated, must overrule the protest.

Judgment will be rendered accordingly.